UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Efrain Suarez,

                                        Plaintiff,

                                                            **Hon. Hugh B. Scott**

                                                            03CV809

                              v.                            **Report &**
                                                            **Recommendation**


Sgt. Kremer, et al.,

                                        Defendants.

_____

        Before the Court is the defendants' motion for summary judgment (Docket No. 67).[1]


                              **Background**

        The plaintiff, Efrain Suarez ("Suarez") commenced this action against defendants Sgt.

Kremer ("Kremer"), Lt. Eickson ("Erickson"), Correction Officer Christofaro ("Christofaro")

and Corrections Officer Longwell ("Longwell") alleging that the defendants violated his civil

_____

        [1] On October 30, 2006, this matter was sent to the District Court for a trial date
inasmuch as all pretrial dates relating to discovery had passed and no motions had been filed.
The Hon. Richard J. Arcara assigned counsel for the plaintiff and referred the matter back to the
undersigned for further discovery. A scheduling order allowing for additional discovery and the
filing of dispositive motions was entered. (Docket No. 62).  The instant motion was filed
pursuant to the scheduling order on February 7, 2008.  Counsel for the plaintiff filed a response
on April 9, 2008. (Docket Nos. 79-82).

                                        1

rights pursuant to 42 U.S.C. §1983.  In his original complaint[2], Suarez alleged that Erickson "rammed" his shoulder into Suarez, causing him to fall an injure his right shoulder (Docket No. 1 at page 5-5a).  He asserts that Kremer has repeatedly sexually harassed him by saying Suarez's name "like a female;" by telling him that "somebody has to put his finger into your rectum and grab balls;" and that on one occasion during a pat frisk, Suarez alleged that  Kremer placed his hands in Suarez's pocket and touched his genitals, and rubbed his chest up against Suarez's back. (Docket No. 1 at page 6 and Docket No. 12 at ¶ 5).  As to Christofaro, Suarez alleged that Christofaro denied Suarez access to go to the messhall, and filed a false misbehavior report against him in retaliation for Suarez's filing of a grievance against Christofaro. (Docket No. 1 at "C. Third Claim").  Finally, in the Amended Complaint, Suarez asserts a variety of conduct against Longwell, such as refusal to allow him to take a shower, denying him access to the law library, and failing to protect him by calling him a "snitch." (Docket No. 12 at ¶ 5-13).

The record reflects that Suarez filed seven grievances against the respective defendants in this case.

| 10/1/02 | The plaintiff filed Grievance EL-24-116-02 against Kremer complaining that Kremer was harassing him. (Grievance EL-24-116-02 included in exhibits attached to Docket No. 1 following "B. Second Claim.") |
|---|---|
| 1/28/03 | The plaintiff filed Grievance EL-24-653-03 complaining of an "act of racism, discrimination, plot, complot, conspiracy; thus as a joint agreement to commit |

---

[2]   Suarez filed an Amended Complaint on June 10, 2004. (Docket No. 12). The allegations in the Amended Complaint are almost exclusively against Longwell, who was not named in the original complaint.  There is no indication that Suarez intended to abandon his claims against the original defendants. At his December 13, 2005 Deposition, Suarez stated that he intended the Amended Complaint to assert "additional" claims. (See Transcript of Suarez Deposition at page 11 attached to Docket No. 69 [hereafter "the Suarez Deposition"]). The Court has therefore treated the Amended Complaint as a supplement to the original and refers to the two documents collectively as the "Supplemented Complaint").

harass (sic) against me, in violation of Directive 4933" based upon the fact that he was denied a recreation hour while on keep-lock by Christofaro and another corrections officer identified only as "Berreter" (who is not a defendant in this action). (Grievance EL-24-653-03 included in exhibits attached to Docket No. 1 following "C. Third Claim.")

2/19/03      Suarez files Grievance EL-24-764-03 against Kremer complaining of on-going harassment by Kremer in that he allegedly whistles at Suarez as if he was a female.  Suarez stated that he wants to be transferred to another facility and that a "plot, complot, conspiracy, discrimination and racism of all staff members" exists against him at the Elmira Correctional Facility. (Grievance EL-24-764-03 included in exhibits attached to Docket No. 1 following "B. Second Claim.")

3/15/03      Suarez files Grievance EL-24-846-03 against Erickson alleging that Erickson "pushed [him] against the bars."  (Grievance EL-24-846-03 included in exhibits attached to Docket No. 1 following "A. First Claim.")

5/23/03      Suarez files Grievance EL-25-223-03 asserting on-going sexual harassment by Kremer, including the allegation that on May 22, 2003, Kremer "put [Suarez] against the wall to sexually harass me, touch me for my intimate part of my body." (Grievance EL-25-223-03 included in exhibits attached to Docket No. 1 following "B. Second Claim.")

11/20/03    Suarez files Grievance EL-25-858-03 alleging that he had a call out slip to go to the library, but when he went to his cell to get the call out slip, Longwell would not open the gate to let him get the call out slip, and therefore, he could not go to the library. (Docket No. 12, attached exhibits).

4/16/04      Suarez files Grievance EL-26-472-04 alleging on-going harassment and retaliation against him based upon the April 16, 2004 incident in which Longwell allegedly jeopardized his safety by calling Suarez a "snitch." (Docket No. 12, attached exhibits).

**Exhaustion**

Initially, the Court notes that in addition to those claims identified in the plaintiff's various grievances, Suarez has as asserted several more claims in his Supplemented Complaint and the documents attached. The defendants contend that these claims must be dismissed as

unexhausted.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id.  It is well settled that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002), rev'g, Nussle v. Willette, 224 F.3d 95 (2d Cir. 2000).  In enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials an opportunity to deal with inmate complaints through internal processes.  Id. at 534-25.  The Act's "dominant concern [is] to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court."  Id. at 528.  The intent of the PLRA is to restrict inmate litigation where they had, but failed, to use all of their internal administrative remedies before commencing a federal civil rights action.  See Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001); Evan v. Manos, 336 F.Supp.2d 255, 258 (W.D.N.Y. 2004) (Larimer, J.)  Further, the statute requires a prisoner to exhaust the grievance procedures offered regardless of the type of relief they provide, since "one 'exhausts' processes, not forms of relief."  Booth v. Churner, 532 U.S. 731, 739 (2001) (exhaustion mandated even when the inmate sought monetary relief and the administrative process offered none); Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004).  This exhaustion requirement extends to retaliation claims. Lawrence v. Goord, 304 F.3d 198 (2d. Cir. 2002)("retaliation claim fits within the category of 'inmate suits about prison life,' and therefore

must be preceded by the exhaustion of state administrative remedies").

The exhaustion requirement may be excused only when "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir.2006) (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir.2004)). Absent extenuating circumstances, exhaustion of all administrative grievance remedies is required. Simply sending letters to a variety of prison officials will not suffice to satisfy the exhaustion requirement. In Braham v. Clancy, 425 F.3d 177, 183 (2d Cir.2005), the Second Circuit had held that an inmate exhausted his claims by providing enough information through informal avenues about his grievance to allow prison officials to take responsive measures.  However, in Macias v. Zenk, 495 F.3d 37 (2d. Cir. 2007) the Second Circuit expressly held that Braham did not survive the Supreme Court's decision in Woodford v. Ngo, 548 U.S. 81 (2006).  In Braham, an inmate alleged that prison officials violated his Eighth Amendment rights by refusing to grant his request for a cell change. The district court dismissed the prisoner's lawsuit under the PLRA for failure to exhaust administrative remedies. On appeal, the prisoner admitted that he had never filed a formal administrative grievance, but argued that he had satisfied the PLRA's exhaustion requirement by submitting several inmate request forms and by complaining informally to prison staff during a disciplinary proceeding.  The Second Circuit had remanded the case for the district court to consider whether the prisoner's inmate request forms or the complaints he made during the disciplinary proceeding "provided sufficient notice to the prison officials 'to allow [them] to

take appropriate responsive measures.' " Braham, 425 F.3d. at 183.  In Macias, the Second

Circuit held that, in light of Woodford, notice alone is insufficient because "[t]he benefits of

exhaustion can be realized only if the prison grievance system is given a fair opportunity to

consider the grievance" and "[t]he prison grievance system will not have such an opportunity

unless the grievant complies with the system's critical procedural rules." Macias, 495 F.3d. at 44,

quoting Woodford, 548 U.S. at 95.  See also Boddie  v. Bradley, 228 Fed. Appx. 5 at *7 (2d. Cir.

2007) (holding that simply sending informal letters directly to DOCS officials instead of

submitting a complaint on an inmate grievance form, as required by DOCS regulations, does not

satisfy the exhaustion requirement); Henry v. Nassau County Correctional Facility,  2008 WL

682590 (E.D.N.Y. 2008)(Filing a grievance with an individual, however, is different from

presenting your complaint in the prisoner grievance procedure and completely exhausting such

complaint, all of which is required under the PLRA).

     Plaintiff has not presented any reason to the Court why he was unable to properly exhaust

his claims utilizing the grievance process. The record reflects that an adequate inmate grievance

procedure was available to the plaintiff and that he was aware of the program and took advantage

of the process by filing grievances on numerous occasions.  The defendants have asserted the

failure to exhaust as a defense in this action (Docket No. 23 at ¶ 4).  The plaintiff has pointed to

no conduct which could be said to form the basis to find the defendants estopped from asserting

the failure to exhaust or special circumstances excusing the plaintiff's failure to exhaust

administrative remedies.  The plaintiff has failed to exhaust his administrative remedies with

respect to the claims not contained in the grievances noted above, and thus, these additional

claims should be dismissed.

**Discussion**

With respect to his exhausted claims, it appears that the plaintiff asserts the allegations as direct claims of constitutional violations and as conduct in retaliation for his filing of various grievances.  Thus, the claims are addressed separately as allegations of independent constitutional violations and as the basis of a claim of impermissible retaliation.

**Summary Judgment**

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Ford v. Reynolds, 316 F.3d. 351 (2nd Cir. 2003); Fed.R.Civ.P. 56(c).   The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, 316 F.3d. at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.1997) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248, (1986)).  While the moving party must demonstrate the absence of any genuine factual dispute, (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts... . [T]he non-moving party must come forward

with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87(1986); McCarthy v. American Intern. Group, Inc., 283 F.3d 121 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir.2002).However, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2nd Cir. 2000) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).


**Claims Against Erickson**

Suarez alleges that on March 14, 2003, Erickson shouldered him. (Docket No. 1 at page 5; Docket No. 81 at page 4).  His grievance, filed on March 15, 2003 asserts that Erickson "pushed [him] against the bars near the company shower." The plaintiff's allegations against Erickson appear to assert a claim of excessive force under the Eighth Amendment.  The Eighth Amendment is violated by unnecessary and wanton inflictions of pain and suffering. Whitley v. Albers, 475 U.S. 312, 320 (1986). The test of whether prison officials have violated the Eighth Amendment by using excessive force is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The Eighth Amendment is also violated by a prison official's " 'deliberate indifference' to a substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828 (1994). A claim arising under this theory "requir[es] a showing that the official was subjectively aware of the risk." Id.

To establish an excessive force claim, an inmate must satisfy both subjective and objective tests. Hudson, 503 U.S.  at 7-8. To satisfy the subjective test, the inmate must show that the prison officials "had a 'wanton' state of mind when they were engaging in the alleged misconduct." Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir.1994) (citing Hudson, 503 U.S. at 7). In analyzing whether such a showing has been made, courts may consider; "the need for the application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321).   To satisfy the objective test, the inmate must show that the force applied was "sufficiently serious" to establish a constitutional violation. Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). This inquiry is "context specific, turning upon 'contemporary standards of decency.'" Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir.1999) (quoting Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir.1999)). One of the factors to be considered is the nature and seriousness of any injury. See Branham v. Meachum, 77 F.3d 626, 630 (2d Cir.1996). Although the plaintiff need not prove a significant injury to make out an excessive force claim,  "a de minimis use of force will rarely suffice to state a constitutional claim." Griffin, 93 F.3d at 92; Romano v. Howarth, 998 F.2d 101, 105 (2d Cir.1993); James v. Phillips, 2008 WL 1700125 (S.D.N.Y. 2008).

In the instant case, the plaintiff fails to meet his burden to establish the objective prong of above standard. Suarez filed a grievance claiming that on March 14, 2003, Erickson pushed him against bars near the company shower. (Docket No. 70, Bates No. 342).  Erickson denied the allegations in a written statement, stating to the contrary that the plaintiff brushed into him and stated "excuse me." (Docket No. 70, Bates No. 336).  The March 14, 2003 incident was

investigated by the Superintendent; the Central Office Review Committee; and the Inspector

General's Office ("IG") (Docket No. 70 at Bates Nos. 341, 333, 001-002) and all investigations

found the plaintiff's allegations to be unsubstantiated and without merit. Further, it is undisputed

that x-rays of the plaintiff's shoulder were taken after the March 14, 2003 incident and that Dr. G.

Michael Maresca found that the discomfort in Suarez's shoulder was consistent with "calcific

tendonitis" a condition which develops over a long period of time, not as a result of a recent blow.

(Docket No. 70, at Bates Nos. 001; 0287; 0294).

In any event, even if Erickson shoved Suarez as alleged by the plaintiff, the plaintiff has

failed to set forth a claim of constitutional dimension. "Not every push or shove, even if it may

later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional

rights." Hudson, 503 U.S. at 9 (citation omitted). No reasonable jury could conclude that the

degree of force used in this case was sufficiently serious to establish a constitutional violation.

James v. Phillips, 2008 WL 1700125, at *4-*5 (S.D.N.Y. 2008)(Notwithstanding no apparent

need for the use of force of any kind;  "there was nothing more than a shove of an inmate who

was not then handcuffed;" swelling on chin and possible aggravation of prior knee injury not

sufficient to allow reasonable jury to conclude that degree of force used was sufficiently serious

to establish a constitutional violation.);  Headley v. Fisher,  2008 WL 1990771 (S.D.N.Y.

2008)(Plaintiff's claims that Simpson grabbed his shoulder, cursed in his face, slapped him twice

and pushed him in his cell do not constitute "unnecessary and wanton infliction of pain" and do

not demonstrate that Simpson acted maliciously and sadistically to cause harm rather than in a

good faith effort to maintain or restore discipline); Sprau v. Coughlin, 997 F. Supp. 390, 394-395

(W.D.N.Y. 1998)("plaintiff alleges that [prison staff] grabbed him behind the neck and hit him

several times across the neck and face and in the eye. The medical report completed after the incident notes a small bump under plaintiff's eye. Court finds that the conduct alleged here by plaintiff does not reach constitutional dimensions); Brown v. Busch, 954 F. Supp. 588, 597 (W.D.N.Y. 1997)(finding that an officer's pushing, shoving, and striking of an inmate was a *de minimis* use of force); DeArmas v. JayCox, 1993 WL 37501, at *4 (S.D.N.Y. 1993) *aff'd* 14 F.3d 591 (2d Cir. 1993)(determining that an officer's punching and kicking of an inmate was a *de minimis* use of force).  In the instant case, the plaintiff has failed, as a matter of law, to establish a claim of constitutional dimension in this regard.

**Claims against Kremer**

The primary claim alleged against Kremer is that Kremer touched Suarez inappropriately during a pat frisk on May 22, 2003.  Kremer denies any such conduct.  The record reflects that Kremer filed an inmate misbehavior report alleging that on May 22, 2003 at approximately 12:10 p.m., the plaintiff intentionally bumped into him in a stairwell. (Docket No. 71, at Bates No. 53). The next day, on May 23, 2003, Suarez filed an Inmate Grievance Complaint against Kremer characterizing the incident with Kremer on May 22, 2003 as follows:  "Sergeant Kremer, put me up against the wall to sexually harass me, touch me for my intimate part of my body." (Docket No. 71, at Bates No. 41). The defendants contend that Suarez was found guilty of the conduct alleged by Kremer at a Tier II disciplinary hearing and that a subsequent investigation by the IG found Suarez's complaint against Kremer to be unsubstantiated. (Docket No. 74 at 2-3).   In any event, once again Suarez's allegations do not state a claim of constitutional dimension. "Sexual

abuse may violate contemporary standards of decency and can cause severe physical and psychological harm. For this reason, there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." Boddie v. Schnieder, 105 F.3d 857, 861 (2d. Cir. 1997). However, in Boddie, the Second Circuit made it clear that not every allegation of sexual harassment is sufficient to articulate a claim of constitutional dimension.  Indeed, in Boddie, the Second Circuit dismissed as inadequate a prisoner's claim that a female corrections officer made a possible pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pushed her vagina against his penis. Boddie, 105 F.3d 857, 859-861("The isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court."); Morales v. Mackalm, 278 F.3d 126 (2d. Cir. 2002)("Because Morales' allegations do not even rise to the level of those made by the plaintiff in Boddie, they do not state a claim for sexual harassment in violation of the Eighth Amendment to the United States Constitution."); Wylie v. Bedford Hills Correctional Facility of New York, 2008 WL 2009287 *2 (S.D.N.Y. 2008)(While there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can constitute an Eighth Amendment violation, where the alleged conduct is limited to isolated episodes of harassment, and no single incident is severe, a plaintiff does not state a claim under the Eighth Amendment.); Williams v. Fitch, 2008 WL 1947024 *2 (W.D.N.Y. 2008)(An Eighth Amendment claim under § 1983 will not lie, however, where an inmate alleges only minor, isolated incidents which are neither singly nor "cumulatively egregious in the harm they

inflicted."); <u>Davis v. Castleberry</u>, 364 F.Supp.2d 319, 321 (W.D.N.Y.2005) (allegation that

corrections officer grabbed inmate's penis during pat frisk is insufficient to state constitutional

claim); <u>Morrison v. Cortright</u>, 397 F.Supp.2d 424, 425 (W.D.N.Y.2005) (allegations that a

corrections officer touched plaintiff's buttocks, and that another "rubbed up against plaintiff['s]

buttocks with [the officer's] private part" during a strip search describe an isolated incident

unaccompanied by physical injury, and therefore are not sufficiently serious to establish a

constitutional claim); <u>Montero v. Crusie</u>, 153 F.Supp.2d 368, 373, 375 (S.D.N.Y.2001)

(allegation that corrections officer squeezed inmate's genitalia during pat-frisks on several

occasions does not show sufficiently serious deprivation to establish Eighth Amendment

violation, particularly when inmate did not allege that he was physically injured by such

conduct); <u>Nelson v. Michalko</u>, 35 F.Supp.2d 289, 293 (W.D.N.Y.1999) (allegation that inmate's

anal area was touched by a metal detector during a search does not describe sufficiently serious

conduct to raise an Eighth Amendment claim); <u>Williams v. Kane</u>, 1997 WL 527677  at *11

(S.D.N.Y.1997) (allegation that correctional officer put his hand down inmate's pants and

fondled inmate's genitals during pat frisk fails to state constitutional claim).

The alleged conduct by Kremer, if plaintiff's allegations[3] were accepted as true, is no

more egregious than the conduct found to be insufficient to rise to the level of a constitutional

violation in <u>Boddie</u> and its progeny.  Based on the above, the plaintiff's claim of sexual

harassment as against Kremer should be dismissed.

The plaintiff also asserts that Kremer verbally harassed him by saying Suarez's name "as

---

[3]   Other than the plaintiff's testimony, Suarez's allegations regarding the alleged conduct
by Kremer are unsubstantiated in the record.

if he was a female." Such allegations are insufficient to support a §1983 claim. Johnson v.

Eggersdorf, 8 Fed. Appx. 140, 143 (2d Cir.2001) (citing Purcell v. Coughlin, 790 F.2d 263, 265

(2d Cir.1986)("allegations of verbal harassment are insufficient to base a § 1983 claim if no

specific injury is alleged.") Hendricks v. Boltja, 20 Fed. Appx. 34, 36 (2d Cir.2001) (holding that

"verbal harassment was not actionable" in case where officer, inter alia, told inmate to "get [his]

black ass out of the library" and threatened to "smash [his] head open"); Shabazz v. Pico, 994

F.Supp. 460, 474 (S.D.N.Y.1998) ("verbal harassment or profanity alone, unaccompanied by an

injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not

constitute the violation of any federally protected right and therefore is not actionable under ...  §

1983 "); Jermosen v. Coughlin, 878 F.Supp. 444, 449 (N.D.N.Y.1995) ("Although indefensible

and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation

cognizable under § 1983 ."); Beckles v. Bennett, 2008 WL 821827 (S.D.N.Y. 2008)(alleged

threatening remarks that Plaintiff was "getting no rec, only [defendant's] foot up [plaintiff's]

behind" was insufficient to state §1983 claim).

Finally, Suarez also asserts that on September 9, 2002, Kremer went into his cell and took

his toilet paper. (Docket No. 1 at "B. Second Claim"; Docket No. 69, Deposition Transcript at

page 40).  Once again, the plaintiff's claim does not rise to a constitutional dimension.

Trammell v. Keane, 338 F.3d. 155, 161 (2d Cir., 2003) ("[d]eprivation of other toiletries for

approximately two weeks-while perhaps uncomfortable-does not pose such an obvious risk to an

inmate's health or safety to suggest that the defendants were "aware of facts from which the

inference could be drawn that a substantial risk of serious harm exist[ed], and [that they also

drew] the inference."); Davidson v. Murray, 371 F.Supp. 2d. 361 (W.D.N.Y. 2005)(temporary

denial of toilet paper not sufficient to state eighth amendment claim); <u>Harris v. Fleming</u>, 839

F.2d. 1232, 1235 (7th cir.1988) (dismissing claim of convicted prisoner that lack of toilet paper

for five days and lack of soap, toothpaste and toothbrush for ten days while confined to a filthy,

roach-infested cell violated eighth amendment); <u>McNatt v. Unit Manager Parker</u>, 2000 WL

307000, at *4 (D.Conn. 2000) (totality of conditions in restrictive housing unit, including ... no

toilet paper for one day ... did not rise to level of eighth amendment violation); <u>Glland v. Owens</u>,

718 F.Supp. 665, 685 (W.D. Tenn. 1989) ("[s]hort term deprivations of toilet paper, ... and the

like do not rise to the level of a constitutional violation").


**Claims Against Christofaro & Longwell**

Suarez asserts that both Christofaro and Longwell, separately, engaged in various conduct

affecting the conditions of his confinement.  To establish an Eighth Amendment claim based on

prison conditions, the plaintiff must establish both subjective and objective elements.  First, the

plaintiff must show that the deprivation alleged by the prisoner must be in objective terms

"sufficiently serious" such that the deprivation "den[ied] the minimal civilized measure of life's

necessities " -the objective element. <u>Branham v. Meachum</u>, 77 F.3d 626, 630-31 (2d Cir.1996)

(quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991)); see also <u>Farmer v. Brennan</u>, 511 U.S. 825,

834 (1994) (inmate must establish "substantial risk of serious harm")). Second, because "only the

unnecessary and wanton infliction of pain implicates the Eighth Amendment," the plaintiff must

demonstrate that the responsible prison official had a sufficiently culpable state of mind

amounting to at least deliberate indifference – the subjective element. <u>Farmer</u>, 511 U.S. at 834

(quoting Wilson, 501 U.S. at 298).

In his Complaint, Suarez asserts a number of claims against Christofaro: that on September 9, 2002, Christofaro prevented him receiving a food tray at lunch; that on September 15, 2002, Chistofaro did not allow him to go to mess hall for breakfast; that on October 17, 2002, Christofaro filed a false misbehavior report against him[4]; that on December 5, 2002 and December 13, 2002, Christofaro deliberately kept him in lock-down and not fed. (Docket No. 1 at "C. Third Claim," pages 1 and 2).[5]  The plaintiff has failed to demonstrate that he has exhausted any of these claims.[6]  Similarly, the Supplemental Complaint includes various unexhausted allegations against Longwell.   Suarez alleges that on May 26, 2003,  Longwell came into his cell and disconnected the mechanism on the sink so that when he turned on the sink, his cell flooded;[7] locked him in the shower for 40 minutes on October 4, 2003; denied him a shower on October 21, 2003 and October 23, 2003, denied him access to the library on

---

[4]   On October 17, 2002, Christofaro filed an Inmate Misbehavior Report against Suarez because Suarez "intentionally leaned into me with his right elbow and shoulder bumping me on my right shoulder enough to impede my forward progress." (Docket No. 73 at Bates No. 192). After a Tier III Hearing, Suarez was found guilty of the infraction. (Docket No. 73 at Bates No. 195).

[5]   At his deposition, Suarez testified that he did not know whose decision it was to keep him keeplocked. (See Suarez Deposition at page 65).

[6]   Although not alleged in the body of the Complaint, an exhibit to the Complaint reflects that Suarez filed a grievance against Christofaro on January 28, 2003 asserting that Christofaro and another Correction Officer identified as "Berreter" (who is not a defendant in this action) conspired to prevent him from going to recreation on that date.  See Docket No. 1, Grievance EL-24-653-03 attached with exhibits following "C. Third Claim.").

[7]   Suarez testified that he did not see Longwell do this, but that a porter by the name "Rebel" told him that Longwell did it. (Suarez Deposition at page 70).   Suarez acknowledges that he did not file a grievance as to this claim. (Suarez Deposition at page 73).

November 20, 2003; played with his cell gate on November 23, 2003;[8]  failed to exchange his

razor and allow him a shower on December 13, 2003; and called him a snitch on April 16, 2004.

(Docket No. 12 at ¶¶ 5-13).   Of these claims, Suarez filed a grievance only as to the alleged

denial of access to the law library on November 20, 2003 (Grievance EL-25-858-03) and the

incident in which Longwell purportedly called Suarez "a snitch" on April 16, 2004 (Grievance

EL-26-472-04).

Christofaro and Longwell deny the allegations.   In any event, even if the Court were to

consider both the exhausted and unexhausted conduct alleged to be attributed to Christofaro and

Longwell, the plaintiff's claims against these defendants do not rise to the level of a

constitutional violation.   Dawes v. Walker, 239 F.3d 489, 493 (2d Cir.2001)( a brief loss of

privileges does not rise to constitutional dimension; without more, the allegation that a correction

officer called inmate "an informant" or "a rat" does not rise to constitutional level); Snyder v.

McGinnis, 2004 WL 1949472, at *11 (W.D.N.Y.  2004) (granting a motion to dismiss because

the denial of food on two occasions is *de minimis* and not actionable); Lombardo v. Stone, 2001

WL 940559 (S.D.N.Y. 2001)(claim of denial of food for 24 hours found to be *de minimus*);

Derrick Hamilton v. Conway, 2008 WL 234216 (W.D.N.Y.  2008) ("Defendants denial of ...

water for bathing to Plaintiff for 48 hours is *de minimus* and fails to rise to the level of a

constitutional violation because briefly denying hygienic materials does not violate contemporary

---

[8]   Suarez contends that Longwell "put a security" on the cell preventing it from locking
for approximately one hour while he was out of his cell and only for about three or four minutes
once he returned to his cell.  The plaintiff does not articulate how he was harmed by the failure
for his cell to lock for approximately one hour. (Suarez Deposition at page 84-85).  Suarez
acknowledges that he did not file a grievance with respect to this claim. (Suarez Deposition at
page 85).

standards of decency."); Ford v. Phillips, 2007 WL 946703 (S.D.N.Y.  2007) ("[A]s a matter of

law, minor and temporary deprivations of property, showers and recreation do not violate the

Eighth Amendment."); Beckford v. Portuondo, 151 F.Supp.2d 204, 210 (N.D.N.Y.2001)

(holding that temporary denial of shower rights does not violate the Eighth Amendment);

Beckford v. Portuondo, 151 F.Supp.2d 204, 210 (N.D.N.Y.2001)(holding denial of shower rights

for one day does not violate the Eighth Amendment); Chapple v. Coughlin, 1996 WL 507323, at

*2 (S.D.N.Y.  1996)(denial of shower and recreation for three days did not amount to an Eighth

Amendment violation); Markiewicz v. Washington, 175 F.3d 1020 (7th Cir. 1999) (holding that

prison official's refusal to allow a prisoner access to two showers did not state a claim of

unconstitutional prison conditions); Cosby v. Purkett, 782 F.Supp. 1324, 1329 (E.D.Mo.1992)

(holding that when a prisoner is allowed to shower once every seventy-two hours, the Eighth

Amendment is not violated).  Wilkins v. Roper, 843 F. Supp. 1327, 1328 (E.D. Missouri 1994)

(isolated denial of food tray not a violation of Eighth Amendment); Coleman v. Bartlett, 165

F.3d 13 (2d. Cir. 1998)(The deprivation of access to the law library, without a showing of

resulting harm, is insufficient to state a claim for relief); Jones v. Smith, 784 F.2d 149, 151-52

(2d Cir.1986) (thirty-day denial of access to legal materials held de minimis); A prison inmate

has no general constitutional right to be free from being falsely accused in a misbehavior report.

Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir.1986).

To the extent that the plaintiff claims the conditions of his confinement were

constitutionally impermissible due to the conduct attributed to Christofaro and Longwell,

summary judgment should be granted in favor of the defendants.

**Retaliation Claims**

The plaintiff asserts that much of the conduct asserted against the individual defendants was done in retaliation of his filing grievances against the defendants.  It is well-established that prison officials may not retaliate against inmates for exercising their constitutional rights. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995). To survive summary judgment, "a plaintiff asserting First Amendment retaliation claims must demonstrate the existence of a question of fact that (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dawes v. Walker, 239 F.3d 489, 492 (2d Cir.2001);  Morales v. Mackalm, 278 F.3d 126, 132 (2d Cir.2002); Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir.2000); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996). Furthermore, a prisoner's retaliation claim must also be examined with "skepticism and particular care." Colon, 58 F.3d at 872. The Second Circuit has cautioned that retaliation claims by prisoners are "prone to abuse" as "[v]irtually every prisoner can assert such a claim as to every decision which he or she dislikes." Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983); Dawes, 239 F.3d 489, 491.  Thus, a prisoner's claim of retaliation must be supported by specific and detailed factual allegations. (Colon, 58 F.3d at 872; Flaherty, 713 F.2d at 13) and must demonstrate that challenged conduct was a substantial or motivating factor in adverse actions taken by the prison officials. Bennett v. Goord, 343 F.3d 133, 137 (2d Cir.2003). The alleged retaliation must be more than *de minimis*; that is, it must be sufficient to deter a similarly situated person of ordinary firmness from exercising his or her rights. Davis v. Goord, 320 F.3d 346, 353 (2d Cir.2003).  Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his

19

or her constitutional rights constitutes an adverse action for a claim of retaliation. Dawes, 239

F.3d at 492-493 citing: Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir.2000); see also

Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir.1999);  Crawford-El v. Britton, 93 F.3d 813,

826 (D.C.Cir.1996) (en banc), rev'd on other grounds, 523 U.S. 574 (1998); Bart v. Telford, 677

F.2d 622, 625 (7th Cir.1982). Otherwise, the retaliatory act is simply *de minimis* and therefore

outside the ambit of constitutional protection. Dawes, 239 F.3d. 493,  citing  Davidson v.

Chestnut, 193 F.3d 144, 150 (2d Cir.1999) (per curiam). This objective inquiry is "not static

across contexts," but rather must be "tailored to the different circumstances in which retaliation

claims arise." Dawes, 239 F.3d. at 493 citing Thaddeus-X, 175 F.3d at 398. "Prisoners may be

required to tolerate more than public employees, who may be required to tolerate more than

average citizens, before a [ retaliatory] action taken against them is considered adverse." Id.

Allegations of adverse actions alone, however, are insufficient to establish retaliation

absent facts supporting an inference of a causal connection between the adverse actions and the

protected conduct. See Dawes, 239 F.3d at 492; Diesel v. Town of Lewisboro, 232 F.3d 92, 107

(2d Cir.2000). The causal connection must be sufficient to support an inference that the protected

conduct played a substantial part in the adverse action. In determining whether a causal

connection exists between the plaintiff's protected activity and a prison official's actions, a

number of factors may be considered, including: (i) the temporal proximity between the protected

activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii)

vindication at a hearing on the matter; and (iv) statements by the defendant concerning his

motivation. See Colon, 58 F.3d at 872-73.

In the instant matter, Suarez's claims are conclusory, vague and amorphous.  The plaintiff

points to no specific incident from which the remaining alleged conduct from the defendants is
alleged to emanate.  The record reflects that Suarez has a poor disciplinary record and the
plaintiff has not demonstrated that he has been vindicated in administrative hearings.  As
reflected in the plaintiff's deposition testimony, Suarez asserts only wholly conclusory and self-
serving allegations of a conspiracy to retaliate against him.  Upon being questioned regarding the
alleged incident with Erickson on May 14, 2003 (Suarez Deposition at page 24),  Suarez pointed
to a misbehavior report against him dated November 30, 2001 filed by a Correction Officer
identified as "CO Zelko".  (Suarez Deposition at page 28).  When asked how the two were
related, Suarez gave the following testimony:

> Q:   And, are you saying now – are you saying this [the November 30, 2001
>        misbehavior report] has to do with the March 14, 2003 incident?
>
> A:   What are you saying?
>
> Q:   You pointed out to me this November 2001 misbehavior report.
>
> A:    Yes.
>
> Q:   What did that have to do with the March 14, 2003 incident?
>
> A:   Because Sgt. Erickson harass me in differing way.  Every time I was working, I
>        was cooking at mess hall.
>
> Q:   You are talking about something else now?
>
> A:   Yes.  Can you move the page please. Look at that.
>
> Q:   Okay, the next page.  The next date is a notice to you that, two of them, one of
>        them dated January 24, 2001, the pink one.  Is that the one you're talking about, or
>        the white one.?
>
> A:   Either one.  They gave me a lot.
>
> Q:   You have a lot of notices here, and these are notices to you about things like dirty
>        cell, dirty bars, things about telling you that there are problems in your cell that
>        you should clean up, right?
>
> A:   No.  I got whole bunch of them.
>
> Q:   [They're] a whole bunch of misdemeanor notices, some of them where they found
>        contraband in your cell?

A: Never.  Never.

Q: Never found it?

A: No. No.  I never ever in my stay here have contraband, drug use or weapon in my cell.  Never ever.

Q: All right, and so who wrote these various notices?

A: The CO, or the supervisor.

Q: Are you saying that Erickson wrote there?

A: I'm not saying Erickson. Erickson is the supervisor.  Any time I make complaint, he uses it.  He do it or people on his order to do what they want to do with me.

q: How do you know that he told other people to write these?

A: Because Dondon said – –

Q: How do you spell that?

A: D-O-D-O-N.

Q: D-O-A-N-E  maybe?

A: He was the deputy superintendent at that time.

Q: You complained to him?

A: About the situation.  My family, they come to visit me. At that time, you know, I don't know how much time they delay.  He waited two-hour-and-a-half for my family over there.  There are too many incidents.

Q: Let me go back to these notices about contraband or the way your cell is maintained.  You're saying that Erickson told these officers to write these up?

A: Excuse me, sir?  I not say Erickson.  I say Erickson is the supervisor of C Block.

Q: You're saying that therefore he's liable for what the other officers do because he was supervisor?

A: And I'm the person, I'm the person that make complaint before him about any situation, about seeing his people doing to me.  If you're a supervisor one area to who, who are the people going to ask for something?  It's you as the supervisor.  It's because you are there.[9]

---

[9] Claims of constitutional violation or retaliation cannot be asserted based upon vicarious conduct pursuant to the theory of *respondeat superior*. Snyder v. McGinnis, 2007 WL 3274691 (W.D.N.Y. 2007)(Skretny, J.)(Furthermore, absent some evidence of personal involvement, [defendant] cannot be liable for the issuance of a false inmate misbehavior report based solely on a theory of *respondeat superior*) citing Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994).

Suarez Deposition at pages 30-33.

It is clear from the record that, although he has presented no evidence to support a finding of concerted action, Suarez asserts that every action taken by any correction officer against him constitutes conspiratorial retaliation.  For example, among the unexhausted claims Suarez asserted against Longwell was a purported incident in which Longwell is alleged to have said to another correction officer: "This guy wrote a grievance against me" and "I don't give a shit." When asked why he was suing about such a comment, Suarez responded:

> Q:   And, why is this something that you're suing about?
>
> A:   Well, why he came to talk like this.
>
> Q:   Because he talked like that?
>
> A:   Yes.  It's harassment.
>
> Q:   That's harassment?
>
> A:   It's improper work. I mean, this was retaliation.  Everything against me is retaliation.

Suarez Deposition at pages 85-86.  The plaintiff further contended, again in a conclusory and unsubstantiated manner, that because he filed a lawsuit against people at Elmira, he has been harassed "[a]nywhere I go" (referring to employees at other correctional facilities). Suarez Deposition at page 95.

The plaintiff has failed to set forth a sufficient basis to establish a material question of fact as to the existence of conspiratorial  "pattern of harassment and retaliation" (Docket No. 81 at page 1). In order to establish a §1983 conspiracy claim, a plaintiff must demonstrate: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on him; and (2) "an overt act [was] done in furtherance of that goal causing damages."

Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir.1999); see also Walker v. Jastremski, 430 F.3d 560, 564 n. 5 (2d Cir.2005) ("conclusory or general allegations are insufficient to state a claim for conspiracy under § 1983"); Headley v. Fisher,  2008 WL 1990771 (S.D.N.Y. 2008). "[C]omplaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir.1977); Allah v. Poole, 506 F.Supp. 2d. 174 (W.D.N.Y. 2007)(conclusory allegations insufficient to maintain of conspiracy of defendants to retaliate against plaintiff); Young v. Shipman, 2007 WL 1064316, at *1 (D.Conn. 2007) ("The conspiracy claim is dismissed because plaintiff's vague, unsupported allegations of conspiracy are insufficient to withstand a motion for summary judgment").  It is well-settled that "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, [however] the pleadings must present facts tending to show agreement and concerted action." Concepcion v. City of New York,  2008 WL 2020363 at *3 (S.D.N.Y. 2008) citing McIntyre v. Longwood Central School Dist.,  2008 WL 850263, at *11 (E.D.N.Y. 2008).  In the instant case, other than his own conclusory allegations, the plaintiff has presented no evidence on concerted activity by these defendants.  Instead, the record reflects that the plaintiff has merely lumped all correctional officers together, vicariously attributing the conduct of one correctional officer to another.

In any event, the allegations set forth in Suarez's exhausted claims are insufficient, as a matter of law, to constitute the  "adverse action" necessary to support a claim of retaliation.[10]

---

[10]   Because the Court concludes that the plaintiff's allegations are insufficient to constitute adverse action necessary to maintain a retaliation claim, the Court does not make any

Conduct that is *de minimus* does not give rise to actionable retaliation. What is *de minimis* varies according to context. <u>Dawes</u>, 239 F.3d at 493 ("[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse") (alteration in original) (citing <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 398 (6th Cir.1999)). Thus, in the prison context, not all harms constitute legally sufficient grounds for retaliation claims. See <u>Salahuddin v. Mead</u>, 2002 WL 1968329, at *4-5 (S.D.N.Y. 2002)(citing cases). The conduct alleged in the exhausted claims includes being shoved by Erickson, an isolated inappropriate touching and verbal harassment by Kremer, denial of recreation on one occasion by Christofaro, denial of access to the law library on one occasion and being called a "snitch" by Longwell. This alleged conduct is not sufficient, as a matter of law, to deter an inmate of ordinary firmness, in the context of a prison setting, from exercising his First Amendment rights. See <u>Davis v. Goord</u>, 320 F.3d 346, 353 (2d Cir. 2003) (sarcastic comments do not constitute retaliatory action); <u>Bartley v. Collins</u>, 2006 WL 1289256, at *6 (S.D.N.Y. 2006) ("verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action"); <u>Dawes</u>, 239 F.3d at 493 (concluding that an officer's references to plaintiff as a "rat" and an "informant," combined with plaintiff's conclusory allegations that the references exposed him to assault from other inmates, were insufficient to support a claim for retaliation); <u>Rivera v. Goord</u>, 119 F.Supp.2d 327, 340 (S.D.N.Y.2000) (dismissing retaliation claim against defendant who "shoved" an inmate on the ground that the harm was *de minimis* ); <u>Snyder v. McGinnis</u>, 2007 WL 3274691 (W.D.N.Y.

---

findings as to whether the plaintiff has asserted a causal connection between the alleged conduct and any protected activity by the plaintiff.

2007)(alleged filing of false misbehavior report insufficient to support retaliation claim);  Ford v. Phillips, 2007 WL 946703 (S.D.N.Y. 2007) (Retaliation claim dismissed on the grounds that "as a matter of law, minor and temporary deprivations of property, showers and recreation do not violate the Eighth Amendment.").

Thus, the instant motion for summary judgment should be granted to the extent the plaintiff asserts claims of retaliation.

## Conclusion

Based on the above it is recommended that the motion for summary judgment be granted and that the plaintiff's Supplemented Complaint be dismissed in their entirety.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED**

**HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v.

Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir.

1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil

Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

consider arguments, case law and/or evidentiary material which could have been, but was not,

presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v.

Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written

objections shall specifically identify the portions of the proposed findings and recommendations

to which objection is made and the basis for such objection and shall be supported by legal

authority."  **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District**

**Court's refusal to consider the objection.**

So Ordered.

_/s/ Hugh B. Scott_

United States Magistrate Judge

Western District of New York

Buffalo, New York
June 13, 2008